579 P.2d 1257
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Jerry Ray JAMES, Defendant-Appellant.**

**No. 3277.**

Court of Appeals of New Mexico.

April 25, 1978.
Writ of Certiorari Denied May 23, 1978.

W. Gilbert Bryan and Patrick J. Francoeur, Bryan & Francoeur, Hobbs, Clifford L. Payne, Lovington, for appellant.

Toney Anaya, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

SUTIN, Judge.

This is an interlocutory appeal granted defendant. In the trial court, defendant filed a motion to suppress evidence seized by the State pursuant to a search warrant. After a hearing, the district court entered an order that sustained and denied the motion in part. Defendant appeals. We affirm.

Defendant was charged with conspiracy to commit armed robbery of a residence in Tatum, New Mexico, and as an accessory to this armed robbery.

A warrant was issued to search a trailer house of defendant. It was based on information obtained from a named informant, Thomas Eugene Cawthon. Cawthon was imprisoned in Texas. John E. White, an investigator, interviewed Cawthon in Texas and by long distance telephone conveyed the facts to officer Denis DeLuche, the affiant. White and DeLuche were employed in the office of the district attorney.

A summary of the affidavit that formed the basis of the warrant shows:

Cawthon was involved in the commission of at least 15 armed robberies during the last year. Defendant was involved in the planning, execution or disposition of property in at least five of the robberies. White confirmed the occurrence of the 15 robberies.

Cawthon specifically described the robbery of the residence in Tatum, New Mexico, the offense for which defendant is being tried. This description matched the police investigation of the robbery.

Cawthon described the following stolen property which he claimed to have seen several times in defendant's possession after defendant first acquired it:

1. A suede leather jacket taken in an armed robbery by defendant and others from a residence in Thomas, Oklahoma.

2. A gold, Rolex watch with the victim's name inscribed on it, taken from the victim's residence and given to defendant by Cawthon after the armed robbery.

3. A Sears CB radio stolen by defendant and others from a residence in Irving, Texas.

In addition, Cawthon described diamond jewelry taken from the Tatum residence by robbery. Although some money resulted from the sale of goods taken in the robbery, Cawthon felt "from his close association with James (defendant) and

knowledge of his habits derived therefrom, some of the property is probably still in James' possession."

On the same day as it was issued, the search warrant was executed at defendant's home, and returned with an inventory attached thereto. None of the jewelry from the Tatum residence was found during the search.

Defendant filed a motion to suppress all items seized and listed on the return. The grounds stated were:

(1) The affidavit did not show probable cause to believe any items listed were upon the premises described.

(2) With the exception of a coat and CB radio none of the items seized were listed in the search warrant.

(3) All items seized were seized pursuant to a general search rather than a specific search for specified items.

(4) The warrant was not executed in accordance with law.

A hearing was held on defendant's motion. "If, upon such application, the accused can show in fact that the evidence in question was secured by an unlawful search and seizure, the evidence will be suppressed." 29 Am.Jur.2d, *Evidence,* § 425 (1967). Defendant called as witnesses, *James Sedillo* of the New Mexico State Police Department who led in the search and seizure; *Denis DeLuche,* the police officer; *Thomas Eugene Cawthon,* the informant; *John E. White,* the investigator; and *Ernest L. Carroll,* assistant district attorney, who represented the State at the hearing.

Defendant relied only on the testimony of state witnesses. Defendant, who was present at the hearing, was not called to testify.

After the hearing, the trial court entered an order that categorized the property seized into five classifications, and disposed of defendant's motion to suppress as follows:

4. The property seized during search was in five categories, as follows:

A. Property taken upon the belief that the property was the identical property named in the warrant, being a C.B. Radio, one Rolex watch, and a leather coat. As to this property, the Court finds that the property taken was reasonably in conformity with that described in the warrant, and the seizure was justified.

B. Property not described within the warrant but seized as instrumentalities having a reasonable nexus to the criminal activity under investigation, being a falsified driver's license, a set of burglar alarm master keys, and one .32 Caliber pistol.

The Court finds that the driver's license and the master keys were reasonably seized as having a connection to the activity under investigation.

The Court finds that the .32 Caliber pistol did not have a nexus to the crime in question, was found in a non-exclusive area of occupancy and should be suppressed as evidence in this cause.

C. Property known to be stolen, and known to be in the probable possession of the defendant, but omitted from the search warrant, being one dispatch case.

The Court finds that the dispatch case should be suppressed as evidence in this case, as not being subject to the plain view exception to the warrant requirements for seach [sic].

D. Property taken upon suspicion that it was stolen property described in the warrant, but as to which no determination could be made by the officers at the time and place of search, being a quantity of jewelry, other than watches.

The Court finds that under the total circumstances of the case, the seizure of such property and its retention for a time sufficient to make proper identification, was reasonable and proper.

E. Property not described in the warrant, and taken upon the suspicion that it was fruits of criminal activity, but as to which no determination could be made at the time of search, being several watches, other than the Rolex watch mentioned in Paragraph 4A, above.

Ahe [sic] Court finds that under the total circumstances of the case, the sei-

zure and retention of the watches for a time sufficient to seek to establish ownership was reasonable and proper.

5. By agreement of the State, one address book and one ring binder taken from the residence were suppressed and delivered to the defendant in Open Court:

The court ordered the pistol and dispatch case suppressed as evidence in the case, and the remainder of the property not suppressed.

On appeal, defendant challenged the trial court's findings on motion to suppress in three points:

A. Certain facts in the affidavit were false. Therefore, the affidavit was insufficient to support probable cause.

B. Four watches not particularly described in the warrant should be suppressed.

C. A false driver's license found pursuant to an exploratory search should be suppressed because it had no reasonable relationship to the crime.

Defendant abandoned his contention that the trial court erred in refusing to suppress the burglar alarm keys discovered during the search.

A. *Substantial evidence supported the truth of the facts to merit probable cause.*

Defendant challenged Finding No. 2 that reads:

The affidavit for issuance of warrant was based upon reliable information, and adequately reflected underlying circumstances giving rise to the application and was based upon probable cause.

■ "Probable cause" means a reasonable ground for belief of guilt. It exists where the facts and circumstances within the knowledge of the officers, based upon reasonably trustworthy information, is sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. *State v. Ledbetter,* 88 N.M. 344, 540 P.2d 824 (Ct.App.1975). As defined in Rule 17(f) of the Rules of Criminal Procedure [§ 41–23–17(f), N.M.S.A.1953 (2d Repl. Vol. 6, 1975 Supp.)]:

. . . "[P]robable cause" shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.

Defendant challenges the sufficiency of the affidavit to support probable cause because the allegations were false that Cawthon had subsequently seen the suede leather jacket, CB Radio and Rolex watch in defendant's possession.

Defendant argues that the facts do not meet the first prong of the *Aguilar* test. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). What is claimed to be missing from the face of the affidavit are "some of the underlying circumstances from which the informant concluded that [the stolen items] were where he claimed they were . . . ." [378 U.S. 108 at 114, 84 S.Ct. 1509 at 1514.] Or, as stated in Rule 17(f), supra, the affidavit is lacking in "substantial evidence which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."

■ Cawthon described in detail the robbery of the Tatum residence and the items taken; on numerous occasions, he personally observed the three stolen items from other robberies in the possession of the defendant. This was a sufficient showing of the underlying circumstances from which Cawthon concluded that defendant was in possession of the items described in the warrant.

Defendant also argues that probable cause was not shown because Cawthon's statement relative to seeing the defendant in possession of the jacket, CB Radio and Rolex watch after defendant acquired them was false and should be excised. Defendant claims that the testimony at the hearing shows that Cawthon never told White, the investigator, that Cawthon had seen the three items in defendant's possession; that

whether White or DeLuche were responsible for the misstatements, they were perjurious.

*State v. Gutierrez,* 91 N.M. 542, 577 P.2d 440 (Ct.App., decided March 7, 1978), permits a facial challenge to the credibility of an affidavit and the trial court properly allowed testimony on the issue.

At the hearing, Cawthon's testimony on his observation of defendant's possession of the described items was conflicting. He testified that he did and did not make the statements to White. White testified that his memory was bad concerning Cawthon's statements to him and he could not definitely say that any statement in the affidavit was a lie. DeLuche testified that he included in the affidavit what he had heard from White and he did not embellish on the information given him.

The resolution of this conflict in the evidence rested with the district judge. *State v. Bloom,* 90 N.M. 192, 561 P.2d 465 (1977); *State v. Bidegain,* 88 N.M. 466, 541 P.2d 971 (1975). The evidence was substantial to conclude that the affidavit was credible and the finding of the trial court is affirmed on appeal.

B. *The watches not listed in the warrant could be seized and retained.*

Defendant contends that the trial court erred in concluding that the watches not listed in the warrant could be seized. Defendant challenged Finding No. 4(E). It reads as follows:

Property was not described in the warrant, <u>and taken upon the suspicion</u> *that it was fruits of criminal activity,* but as to which no determination could be made at the time of search, being *several watches, other than the Rolex watch mentioned in paragraph 4A, above.*

The Court finds that under the total circumstances of the case, the *seizure and retention of the watches for a time sufficient to establish ownership was reasonable and proper.* [Emphasis added.]

The police officers seized a Hamilton watch, an Amicks gold pocket watch, a gold Elgin watch, a silver Elgin watch, and a diamond Rolex watch, none of which were mentioned in the search warrant.

At the hearing held some four months after the search, the Hamilton and Amicks watches were identified by the State as stolen property. The Elgin watches and the diamond Rolex watch were not so identified.

The meaning of Finding No. 4(E) is clear. The seizure was made June 16, 1977; the hearing on defendant's motion was October 4, 1977. At the time of search, the State's officers had a report that defendant was involved in five robberies, including the Tatum residence; that numerous items of valuable jewelry had been stolen. They had a list of numerous victims who had been robbed. When the officers discovered valuable jewelry during the search, including the unidentified watches, all of which they thought came from a robbery, they picked up the items for the purpose of contacting victims of robberies to seek and establish ownership. During the interim period, they did establish ownership of two of the unidentified watches.

Under these circumstances, the court found the seizure and retention of the watches by the State for almost four months to try and find the owners was reasonable and proper.

Defendant claims that "property not described in the warrant, and taken upon suspicion that it was the fruits of criminal activity," was not seized upon probable cause; that probable cause rather than suspicion is required for seizure.

If we read the trial court's finding correctly, the issue to decide is this:

Does the State, armed with a valid search warrant directed to the premises of a defendant whom it believed to be involved in the planning, execution or disposition of property taken in at least 5 armed robberies, have the right to seize and retain watches not described in the warrant for a time sufficient to establish ownership based upon a suspicion that the watches were the fruits of criminal activity?

This is a matter of first impression.

Rule 18(a) of the Rules of Criminal Procedure [§ 41–23–18(a), N.M.S.A.1953 (2d Repl. Vol. 6, 1975 Supp.)] provides:

A person aggrieved by a search and seizure may move for the return of the property and to suppress its use as evidence.

In making a determination, we must keep in mind that defendant's motion to suppress is directed against the use of the watches as evidence in the event of trial for robbery of the Tatum residence, and that these watches were not taken in the Tatum residence robbery. The motion is not directed against the illegal seizure and retention of unidentified watches merely to determine ownership. In this respect, the defendant is not prejudiced. Defendant did not seek a return of the watches.

An illegal seizure of the watches, however, may lead to the prosecution of defendant for other robberies. In this respect, the defendant may be prejudiced by the seizure. Although this issue was not raised in the appeal, we believe it is of such public importance that it should be resolved.

Defendant's argument centers around the phrase in the finding ". . . and taken upon the suspicion that . . . [the watches were] fruits of criminal activity, but as to which no determination could be made at the time of the search."

Defendant relied on 68 Am.Jur.2d *Searches and Seizures* § 85 p. 740 (1973) which states:

. . . However, *the mere suspicion or expectation that an item may prove, in some unknown way, incriminating to a defendant is not sufficient justification for the seizure of the item.* [Emphasis added.]

This rule of law is based upon note 2 in the case of *United States v. Dichiarinte*, 445 F.2d 126, 129 (7th Cir. 1971) which reads:

We agree that *the mere suspicion or expectation that an item may prove incriminating to a defendant in some unknown way*—even if subsequent examination discloses that the item is evidence of *previously unsuspected criminal activity*—is not sufficient justification for the item's seizure. . . . [Emphasis added.]

*Dichiarinte* involved a consent search in which government agents, while searching for narcotics, discovered documents used to convict defendant of two counts of wilful tax evasion. On the issue of consent search, *Dichiarinte* was cited in *State v. Alderete*, 88 N.M. 619, 544 P.2d 1184 (Ct. App.1976). On the issue of seizing evidence other than narcotics, the *Dichiarinte* court, assumed "that the items taken were evidence of crime and subject to seizure." Note 2, supra, followed. *Dichiarinte* stands for the proposition that even though consent to search for narcotics is granted officers, they have no right to seize other property such as documents and papers of defendant with which to convict him of a different criminal offense. Note 2 was pure dictum. It was accepted as a rule of law by Am.Jur.2d.

■ We have no quarrel with the rule. We simply point out that it has no application to the instant case. *Here, there was knowledge of previous criminal activity, not mere suspicion, and the watches seized may prove incriminating to the defendant in a known way.*

Defendant's argument seems to be that "Generally probable cause rather than suspicion is required for seizure." That is true. Defendant relies on *Cook v. State*, 134 Ga. App. 712, 215 S.E.2d 728, 731 (1975). *Cook* involved a *plain view warrantless seizure* of a coin collection from defendant without any information or knowledge that the coin collection was stolen property. The court said:

. . . While the circumstances were such as to lead the officers to have a bare suspicion of criminal conduct, they were not sufficient to justify the seizure of the coins and the consequential arrest of defendant. " 'Probable cause means . . reasonable grounds, and is that apparent state of facts which seems to exist after reasonable and proper inquiry.* [Cit.

omitted.]' Rumor, suspicion, speculation or conjecture is not sufficient." [Emphasis added.]

It does not require clairvoyance to distinguish *Cook* from the instant case.

■ Here, the search was made under a valid search warrant. It was based upon reasonable and proper inquiry of Cawthon, an inquiry that disclosed defendant had been involved in five robberies, including the Tatum residence; that reasonable grounds existed to seize the watches because the officers suspected the watches were related to the five previous robberies. This seizure was not based upon mere suspicion of criminal conduct. It was not based upon rumor, speculation or conjecture. It was based upon knowledge of previous criminal activity. The foundation for the seizure of the watches was established. This was sufficient to lead the officers to believe that something was wrong with defendant's possession of the watches. This suspicion, based upon an adequate foundation, was sufficient to establish probable cause i. e., after inquiry made of Cawthon, reasonable grounds existed that the watches were stolen.

There is another basis upon which the four watches were reasonably and properly seized.

In *State v. Bell*, 90 N.M. 160, 162, 560 P.2d 951, 953 (Ct.App.1977), this Court said:

. . . There are situations where items not described in the affidavit and warrant may properly be seized. (Citations omitted) In *Andresen v. Maryland,* supra [427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976)] the United States Supreme Court upheld the seizure of items not described in the warrant on the basis that the officers "reasonably could have believed" that the seized items could be used to show defendant's intent with respect to items seized pursuant to the warrant.

In *Andresen*, defendant was charged with the crime of false pretenses based on a misrepresentation made to the purchaser of Lot 13T that title to the property was clear. Defendant's motion to suppress was denied as to documents pertaining to a lot other than Lot 13T, but located in the same subdivision and subject to the same liens as Lot 13T. The court held the documents admissible in evidence during the trial. During the course of the opinion the court said:

. . . In this case, we conclude that the trained special investigators *reasonably could have believed that the evidence* specifically dealing with another lot in the Potomac Woods subdivision *could be used to show petitioner's intent* with respect to the Lot 13T transaction. [427 U.S. 463 at 483, 96 S.Ct. 2737 at 2749.]

In the instant case, defendant is charged with conspiracy to commit armed robbery, and as an accessory to this armed robbery. These are criminal intent crimes.

DeLuche testified that he seized jewelry, including the watches, that was valuable and that he thought came from previous robberies. We conclude that the State's officers "reasonably could have believed that the evidence . . . could be used to show [defendant's] intent" with respect to the robbery of the Tatum residence if the watches are proved to have been stolen. The hearing disclosed that two of the watches seized were stolen. "The possession of stolen property is illegal; it is the equivalent of *contraband,* and is subject to seizure." *State v. Griffin,* 84 N.J.Super. 508, 202 A.2d 856, 862 (1964).

■ Presently the record does not disclose the disposition of the unidentified watches. The law is established that when in the course of a lawful search for property illegally possessed, the officers conducting the search discover other property illegally possessed, the property so discovered may be seized. *State v. Carlton,* 82 N.M. 537, 484 P.2d 757 (Ct.App.1971). The two stolen watches were legally seized. The unidentified watches were legally seized if the continued investigation by the State discloses that they were stolen. Otherwise, they were not legally seized.

From "the total circumstances of the case, the seizure and retention of the

watches for a time to establish ownership was reasonable and proper."

### C. The defendant's false driver's license was properly seized.

Under the third point, defendant challenged Finding No. 4(B). It reads as follows:

4(B). Property not described within the warrant but seized as instrumentalities *having a reasonable nexus to the criminal activity under investigation, being a falsified driver's license, . . . ..*

The court finds that the driver's license . . . . (was) reasonably seized as having a connection to the activity under investigation. [Emphasis added.]

During his search, Office DeLuche was looking for diamonds. He entered one of the bedrooms of the house trailer and discovered defendant's shirts in a closet. He made a pat down of shirt pockets and came up with everything from kleenex to lint, without knowledge of what the objects were until he brought them out. In one shirt pocket, he felt something hard, pulled it out, and discovered that it was a false driver's license made out in the name of another person. This driver's license was not in "plain view," but it was seized.

The issues to determine are: (1) Was the false driver's license reasonably seized when discovered during search for jewelry; and (2) if properly seized, did it have a connection to the activity under investigation?

■ *State v. Paul*, 80 N.M 521, 458 P.2d 596 (Ct.App.1969) bears upon the "plain view" doctrine. Here, the search warrant authorized a search of defendant's residence for coins taken in a burglary. In the course of the search the officers came upon some trousers and boots assumed to be in "plain view," which items appeared to have some relationship to the burglary. The admission in evidence of these items was held to be reversible error. This court held the "Marron" rule controlling, i. e., that in executing

a search warrant the officers have no authority to seize items in "plain view" not described in the warrant that are free of any tinge of illegality. Such items possessed by defendant are accorded the full protection of the Fourth Amendment on Search and Seizure. Such seizures are unreasonable because they do not fall within the scope of the warrant. This rule, however, does not apply to items of evidence seized, such as contraband and stolen property possessed by the defendant, that are tainted with illegality.

■ The "plain view" doctrine did not justify seizure of defendant's false driver's license. The question to decide is whether the seizure was permissible under the facts of this case. *State v. Alderete,* supra. *Alderete* holds that contraband found during a search within the scope permitted by the search warrant is properly seized. We must determine whether a false driver's license is contraband and whether it was discovered within the scope permitted by the search warrant.

■ "[C]ontraband is indeed property in which the Government holds a superior interest, but only because the Government decides to vest such an interest in itself. And while there may be limits to what may be declared contraband, the concept is hardly more than a form through which the Government seeks to prevent and deter crime." *Warden v. Hayden*, 387 U.S. 294, 306, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967). Within the perimeter of this definition falls any article, the possession of which is declared illegal by the legislature. *Blackmon v. Brotherhood Prot. Order of Elks, Etc.,* 232 Ga. 671, 208 S.E.2d 483 (1974); *State v. Bryant,* 250 So.2d 344 (Fla. App.1971).

■ "Any person who possesses an altered, forged or fictitious driver's license is guilty of a misdemeanor." Section 64–13–49.2(A), N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2). Possession of a false driver's license is forbidden because it is illegal or illicit and comes within the definition of "contraband."

The scope permitted by the search warrant needs amplification. In *Alderete*, the officers were searching for heroin. The contraband was discovered when officers opened a cedar chest, a metal pill box in a purse, and an overnight case. The court said:

. . . There is no claim that the search for heroin was in impermissible areas. While searching for heroin the officers found the contraband in question. The *search* being within the scope of the consent given, the officers could lawfully *seize* contraband discovered during that search. [88 N.M. 619 at 621, 544 P.2d 1184 at 1186.]

The Fourth Amendment to the Constitution of the United states provides that people shall be secure in their persons, houses, papers and effects against unreasonable searches and seizures. Police officers shall not undertake a full exploratory search that invades the privacy of the home.

■ A permissible area of search within the authorized perimeter of a search warrant is a good faith search in the premises for the type of property described in the warrant. Police officers may search in those areas of the house where they have a reasonable expectation of finding the property described. The term "search" "implies some exploratory investigation or an invasion and quest, a looking for or seeking out. . . . A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search.'" *People v. West*, 144 Cal.App.2d 214, 300 P.2d 729, 733 (1956).

■ If the property described is a television set, officers who search in drawers, shelves and cupboards would violate the perimeter of the search warrant. If, however, the property described is jewelry such as a diamond, a watch, or a necklace, items that can be concealed or hidden in the premises, a search of drawers, shelves, cupboards or clothing, would not violate the perimeter of the search warrant. This method of search would be reasonable.

■ We hold that the false driver's license was contraband discovered within the scope of the search warrant.

Finally, defendant argues that the false driver's license did not have a reasonable nexus to criminal activity under investigation.

"There must, of course, be a nexus— *automatically provided in the case of fruits, instrumentalities or contraband*—between the item seized and criminal behavior." [Emphasis added.] *Warden, Maryland Penitentiary v. Hayden*, supra, 387 U.S. at 307, 87 S.Ct. at 1650. The nexus between the items and some criminal offense arises from the offense for which a person is arrested. *Smith v. State*, 256 Ind. 603, 271 N.E.2d 133 (1971). In *Bretti v. Wainwright*, 439 F.2d 1042 (5th Cir. 1971), a robbery occurred. The officers received consent of Bretti to search for furs and jewels. The court said:

. . . The unexplained presence in (Bretti's) apartment of a driver's license bearing Annello's name would reasonably arouse suspicion that it was utilized in the robbery. Since there is a nexus between the crime for which the evidence was sought and the driver's license that was seized, we cannot hold that (Bretti's) consent was abused. [439 F.2d at 1046.]

Defendant's false driver's license was also in another man's name. It was contraband. "Nexus" was automatically provided. It did have a nexus to the criminal activity under investigation. Defendant's false driver's license was properly seized.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ. (concurring in result only).