767 P.2d 379

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Edward S. WYROSTEK, Defendant–Appellee.**

**No. 10626.**

Court of Appeals of New Mexico.

Dec. 6, 1988.

Certiorari Denied Jan. 10, 1989.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender, Wade H. Russell, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

OPINION

ALARID, Judge

The state appeals an order suppressing a blood-alcohol test taken from defendant-appellee, Edward Wyrostek (Wyrostek), while he was unconscious and before he had been placed under arrest. Defendant asserts that the Implied Consent Act (Act), NMSA

1978, Sections 66–8–105 to –112 (Repl. Pamp.1987), requires an arrest before a blood test can be administered to an unconscious person. We disagree and, accordingly, reverse the trial court's order suppressing the evidence.

FACTS

Wyrostek was the driver of a vehicle involved in a two-car accident in Albuquerque on October 3, 1987. His three passengers died as a result of the accident. Wyrostek was injured and unconscious at the scene of the accident. The investigating officer, R.F. Gomez, detected a strong smell of alcohol emanating from Wyrostek's vehicle.

Wyrostek was transported to a hospital and, while still unconscious, Officer Gomez read him the Implied Consent Act. The officer also directed registered nurse Raymond Glodek to take a blood sample so that Wyrostek's blood-alcohol level could be determined. Officer Gomez did not obtain a search warrant, nor did he arrest or place a hold on defendant because of his unconscious state. Wyrostek was not formally arrested until several months later when he was arraigned.

The trial court found, and Wyrostek does not dispute, that the warrantless seizure of blood did not violate Wyrostek's constitutional rights under the fourth amendment of the United States Constitution or article II, section 20 of the New Mexico Constitution. Because Officer Gomez had probable cause to believe Wyrostek was under the influence of intoxicating liquor, and because of the evanescent nature of blood-alcohol levels, the trial court found that exigent circumstances justified the warrantless seizure of blood. Thus, no constitutional issues are raised by this case.

DISCUSSION

Two sections of the Act are relevant to this case. Section 66–8–107 provides:

Implied consent to submit to chemical test.

A. Any person who operates a motor vehicle within this state shall be deemed to have given consent, subject to the provisions of the Implied Consent Act [66–8–105 to 66–8–112 NMSA 1978], to chemical tests of his breath or blood, as determined by a law enforcement officer, or for the purpose of determining the drug or alcoholic content of his blood *if arrested* for any offense arising out of the acts alleged to have been committed while the person was driving a motor vehicle while under the influence of an intoxicating liquor or any drug. [Emphasis added.]

B. A test of blood or breath shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle within this state while under the influence of intoxicating liquor or drug.

Section 66–8–108 provides:

Consent of person incapable of refusal not withdrawn.

Any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the consent provided by Section 66–8–107 NMSA 1978, and the test or tests designated by the law enforcement officer may be administered.

Wyrostek contends that the question presented in this case has already been answered by *State v. Richerson*, 87 N.M. 437, 535 P.2d 644 (Ct.App.1975). In *Richerson*, this court held the Act "implies consent if the person is arrested." *Id.* at 439, 535 P.2d at 646. We reached this decision because several provisions of the Act clearly provide for arrest before the test may be administered. *See* §§ 66–8–107(A), –110(C) and –111(A–C). Section 66–8–108 does not unequivocally require arrest. Arguably, however, it can be read as requiring arrest also. The section speaks of "the consent provided by Section 66–8–107," which the *Richerson* court determined to be consent triggered by arrest. At least one other court which has construed an identical statute has reached the result urged by Wyrostek. *See State v. Howard*, 193 Neb. 45, 225 N.W.2d 391 (1975) (construing Neb. Rev.Stat. §§ 39–669.08 and –669.10 (1984)). However, we believe the facts in *Richerson* are distinguishable from the case at bar because the defendant in that case was

neither unconscious nor incapable of refusing consent, nor did the officer in that case have probable cause to direct that a blood-alcohol test be administered.

Wyrostek argues in his brief that the defendant in *Richerson* "suffered a loss of consciousness." The pathologist who took the blood sample in *Richerson* testified that although Richerson was "responsive, I can't really say that he really understood what I was saying." 87 N.M. at 439, 535 P.2d at 646. Despite this testimony, neither party argued the applicability of Section 66–8–108 (at that time Section 64–22–2.8), nor did the court find that Richerson was unconscious or otherwise incapable of refusal within the meaning of Section 66–8–108. Thus, we believe the court's discussion of the unconscious person provision was dicta.

The traditional principles of statutory construction also support our conclusion that the Act does not require a police officer to arrest an unconscious person before ordering a blood-alcohol test. The cardinal rule of statutory construction is that there is no need to construe an unambigious statute. Instead, the reviewing court will give a literal meaning to such a statute to give effect to its plain meaning. *Atencio v. Board of Educ. of Penasco Indep. School Dist. No. 4*, 99 N.M. 168, 655 P.2d 1012 (1982). *See, e.g., Storey v. University of New Mexico Hosp./BCMC*, 105 N.M. 205, 730 P.2d 1187 (1986). However, a court will not give a statute a literal reading when to do so leads to absurd or unreasonable results, or requires useless acts. *Atencio v. Board of Educ. of Penasco Indep. School Dist. No. 4; State v. Doe*, 95 N.M. 88, 619 P.2d 192 (Ct.App.1980); *State v. Trujillo*, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973).

We believe that requiring a police officer to arrest an unconscious or otherwise incapacitated person in order to trigger the Act both leads to an absurd result and requires a useless act. "A person is arrested when his freedom of action is restricted by a police officer and he is subject to the control of the officer." *Boone v. State*, 105 N.M. 223, 227, 731 P.2d 366, 370 (1986)

(citing *State v. Frazier*, 88 N.M. 103, 105, 537 P.2d 711, 713 (Ct.App.1975)). Obviously an unconscious person's freedom of action is already restricted; requiring a police officer to formally arrest him would therefore be a useless act.

Wyrostek argues that prior arrest is not an absurd or useless act because it also performs the function of ensuring that the police focus on probable cause prior to the time they intrude upon a suspect's body, not after they have taken the blood test. Yet, the Act itself has a built-in probable cause requirement in that it provides for testing when the police officer has "reasonable grounds to believe the person to have been driving ... while under the influence of intoxicating liquor." § 66–8–107(B). Probable cause is defined in New Mexico as *"reasonable ground[s] for belief of guilt.* It exists where the facts and circumstances within the knowledge of the officers, based upon reasonably trustworthy information, is sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed." *State v. James*, 91 N.M. 690, 694, 579 P.2d 1257, 1261 (Ct.App.1978) (emphasis added).

A survey of other states with implied consent acts similar to ours, which have squarely addressed this issue, persuades us that our interpretation of the Act is correct. Eleven of fourteen states addressing this issue have held that arrest of an unconscious person is not a prerequisite to the application of an implied consent statute. For example, in *State v. Chastain*, 594 P.2d 458 (Wyo.1979), the Wyoming Supreme Court held that the Wyoming Implied Consent Statute, where relevant provisions are identical to ours, did not require the prior arrest of an unconscious person. "It would serve no purpose to require an arrest or the conveying of information to one who was dead, unconscious, or otherwise incapable of refusing a test." *Id.* at 462. Similarly, the North Carolina Court of Appeals in *State v. Hollingsworth*, 77 N.C.App. 36, 41, 334 S.E.2d 463, 467 (1985), held that "[r]equiring the arrest of an unconscious driver would serve no sensible purpose." *See also State v. Huffman*, 137 Ariz. 300, 670 P.2d 405 (App.1983); *Mercer*

*v. State,* 256 Ark. 814, 510 S.W.2d 539 (1974); *State v. Mitchell,* 245 So.2d 618 (Fla.1971); *Woosley v. Central Uniform Rental,* 463 S.W.2d 345 (Ky.App.1971); *State v. Campbell,* 189 Mont. 107, 615 P.2d 190 (1980); *Galvan v. State,* 98 Nev. 550, 655 P.2d 155 (1982); *State v. Taylor,* 2 Ohio App.3d 394, 442 N.E.2d 491 (1982); *State v. Wood,* 576 P.2d 1181 (Okla.Cr.App. 1978); *In the Interest of I., R.L.,* 739 P.2d 1123 (Utah App.1987) (Bench, J., concurring and dissenting).

Wyrostek cites *State v. Towry,* 26 Conn. Sup. 35, 210 A.2d 455 (1965), in support of his assertion that prior arrest is required. This case is not persuasive, however, since Connecticut's implied consent law has no provision for testing unconscious persons. *See* Conn.Gen.Stat. § 14–227b (1987). Wyrostek also cites several other cases in support of his position: *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *United States v. Harvey,* 701 F.2d 800 (9th Cir.1983); and *People v. Superior Court of Kern County,* 6 Cal.3d 757, 100 Cal.Rptr. 281, 493 P.2d 1145 (1972) (In Bank). We find these cases to be inapplicable because they deal with the constitutional, not statutory, requirements surrounding implied consent laws. Furthermore, *Harvey,* which dealt with both a conscious defendant and an unconscious defendant, held that there was no constitutional need to formally arrest the unconscious defendant since he "could not appreciate the significance of such action." 701 F.2d at 806.

Several states with statutes like New Mexico's *do* require a prior arrest. *See Redus v. State,* 398 So.2d 757 (Ala.Cr.App. 1981); *State v. Howard; Scales v. State,* 64 Wis.2d 485, 219 N.W.2d 286 (1974). We believe, however, that logic favors our interpretation of the Implied Consent Act, and find these cases unpersuasive.

CONCLUSION

We hold that the Implied Consent Act does not require a formal arrest of an unconscious person before the administration of a blood-alcohol test. Therefore, we reverse the district court's order suppressing the results of the blood-alcohol test.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.