This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Steven A. Troyer, appeals from a judgment of conviction in the Wayne County Court of Common Pleas. We affirm.
 I.
{¶ 2} A two-car traffic accident occurred on Back Orrville Road in Wayne County in the late evening of May 25, 2001. As a result of that accident, Appellant was charged with three counts: (1) aggravated vehicular assault, (2) driving while under the influence of alcohol, and (3) driving with a prohibited blood-alcohol concentration. Appellant entered a plea of not guilty to all counts and filed a motion to suppress the results of a blood-alcohol test. As grounds, he asserted that the blood was withdrawn in violation of the Fourth Amendment to the United States Constitution and also that it was not withdrawn within two hours of his alleged operation of the vehicle. Following a hearing, the trial judge overruled the Fourth Amendment argument and dismissed the third court, pursuant to the two-hour requirement of R.C. 4511.19(D)(1).
{¶ 3} Appellant proceeded to trial on the remaining two counts and a jury returned a verdict of guilty on both. The trial judge sentenced Appellant to a term of five years on the charge of aggravated vehicular assault and six months on the charge of driving while under the influence of alcohol, to be served concurrently. Appellant has appealed to this court and has assigned two errors for review.
 II. Assignment of Error No. 1
{¶ 4} "The trial court erred by overruling appellant's motion to suppress the results of the blood alcohol test, which was obtained as the result of blood drawn at the instruction of the state patrol in violation of the Fourth Amendment to the United States Constitution, when there was no probable cause for the blood draw, no probable cause for an arrest, no search warrant authorizing the blood draw, and no consent by appellant."
{¶ 5} In his first assignment of error, Appellant contends the trial court erred in overruling his motion to suppress the results of a nonconsensual and warrantless blood-alcohol test, taken while he was unconscious. He contends that this procedure violated theFourth Amendment.
{¶ 6} The relevant facts, as presented at the hearing on the motion to suppress, came from the testimony of two state troopers. Shortly after 11:00 p.m., on May 25, 2001, state highway patrol officers were dispatched to the scene of a two-car accident. Each vehicle had one occupant. By the time the highway patrol arrived at the scene, Appellant had already been taken to Orrville Dunlap Hospital by members of the Orrville Fire Department and was subsequently life-flighted to Aultman Hospital. Emergency workers were still attempting to free the other driver from her severely damaged automobile.
{¶ 7} Trooper Mark Haines conducted an inventory of Appellant's vehicle and testified that he detected the odor of alcohol in the vehicle. Trooper Haines determined that a blood sample had not been taken from Appellant at Orrville Dunlap Hospital. Thereupon, he contacted the highway patrol post closest to Aultman Hospital and requested that an officer go to the hospital to obtain a blood sample from Appellant for purposes of conducting a blood-alcohol test.
{¶ 8} Shortly after 1:00 a.m., Trooper Steven Sherrod received a dispatch to proceed to Aultman Hospital and attempt to obtain a blood sample from Appellant. Trooper Sherrod testified that he located Appellant in the trauma room of the hospital, where several doctors and nurses were attending him. Trooper Sherrod stated that he could smell the odor of an alcoholic beverage while several feet away from Appellant. When Trooper Sherrod asked to speak to Appellant, the nurse explained that he was incoherent and incapable of communicating. Appellant was not responding to the doctors and nurses attending him. In compliance with Trooper Sherrod's request, a medical technician drew a sample of Appellant's blood at approximately 1:30 a.m., which subsequently revealed a blood-alcohol concentration of .176 grams of alcohol per 100 milliliters of blood.
{¶ 9} The trial court denied Appellant's motion to suppress, finding that the blood-draw was reasonable under the circumstances and did not violate Appellant's Fourth Amendment rights.
{¶ 10} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. " `In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " State v. Hopfer (1996), 112 Ohio App.3d 521,548, appeal not allowed, (1996), 77 Ohio St.3d 1488, quoting State v.Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, "an appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998)127 Ohio App.3d 414, 416, citing Ornelas v. United States (1996),517 U.S. 690, 699, 134 L.Ed.2d 911.
{¶ 11} The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons *** against unreasonable searches and seizures" and ensures that "no Warrants shall issue but upon probable cause ***." The "overriding function of theFourth Amendment is to protect personal privacy and dignity against unwarrranted intrusion by the State." Schmerber v. California (1966),384 U.S. 757, 767, 16 L.Ed.2d 908.
{¶ 12} The withdrawal of a sample of blood from the body of an individual in order to determine its blood-alcohol content for the purpose of proving a criminal charge constitutes a search within the meaning of the Fourth Amendment. Schmerber, 384 U.S. at 767. See, also,State v. Sisler (1996), 114 Ohio App.3d 337, 341. Fourth Amendment analysis neither permits nor forbids all such bodily intrusions; rather, "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Schmerber,384 U.S. at 768.
{¶ 13} In Schmerber, where there had been a prior arrest, the Court set forth several criteria for the reasonableness of an intrusive search, including the following: (1) the government must have a clear indication, rather than a mere chance, that incriminating evidence will be found; (2) there must be a search warrant or exigent circumstances, such as the imminent destruction of evidence, to excuse the warrant requirement; and (3) the method used to extract the evidence must be reasonable and must be performed in a reasonable manner. Schmerber,384 U.S. at 770-72. Appellant has not challenged the reasonableness of the blood-draw procedure, and we, therefore, do not address that factor.
{¶ 14} In a subsequent case, the Supreme Court noted that the reasonableness of an intrusive search depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in obtaining the evidence. Winstonv. Lee (1985), 470 U.S. 753, 760, 84 L.Ed.2d 662. See, also, Whren v.United States (1996), 517 U.S. 806, 818, 135 L.Ed.2d 89 (requiring a balancing analysis in searches involving a physical penetration of the body). "In a given case, the question whether the community's need for evidence outweighs the substantial privacy interests at stake is a delicate one admitting of few categorical answers." Winston,470 U.S. at 760. The Winston court also recognized that Schmerber provides the appropriate framework for such cases. Id.
 No prior arrest
{¶ 15} We first consider Appellant's contention that the extraction of blood from him violated the Fourth Amendment because it was obtained in the absence of a prior arrest. He contends that Schmerber
supports his position. The court in Schmerber admitted evidence of an unconsented blood test, where it followed an arrest. Since Appellant was not under arrest at the time the blood was drawn from him, he claims the evidence should have been suppressed.
{¶ 16} In the case at bar, the absence of an arrest, however, is not determinative. While the Schmerber court concluded that the police were justified in taking a blood sample in that case because the circumstances indicated the blood test results would be positive and because the defendant was under arrest, the case did not require that an arrest take place before every nonconsensual search. Rather, it simply stated that "the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest."Schmerber, 384 U.S. at 771. Indeed, Ohio has since held that theFourth Amendment does not require an arrest in all cases prior to administering a blood-alcohol test. See, e.g., State v. Woods (Sept. 9, 1991), 12th Dist. No. CA90-07-125. Therefore, we do not find that distinction to be dispositive.
 Unconscious Party
{¶ 17} The more precise question before us is whether theFourth Amendment requires the arrest of an unconscious or incapacitated driver before a blood sample may be taken. Schmerber did not involve an unconscious or incapacitated driver. Furthermore, no Ohio case specifically addressing this question has been brought to our attention by either party and there appears to be a split of opinion among other jurisdictions upon it.[1] See State v. Campbell (1980), 189 Mont. 107,116, 615 P.2d 190, 196; Annotation (1976), 72 A.L.R.3d 325, Section 4; and 3 LaFave, Search and Seizure (1996), Section 5.4(b), fn. 21 and 22.
{¶ 18} For its part, the State cites Breithaupt v. Abram (1957),352 U.S. 432, 352 L.Ed.2d 448 for the principle that an unconscious individual may have a blood sample withdrawn consistent with constitutional principles. In that case, a driver was injured in a serious two-car traffic accident and was taken to a hospital for treatment. A nearly empty bottle of whisky was found in the glove compartment. While the driver was lying unconscious in the emergency room, the smell of liquor was detected on his breath. Believing him to be intoxicated, police officers directed medical personnel to withdraw a sample of his blood while he was unconscious.
{¶ 19} On review, the Supreme Court first declined the petitioner's invitation to extend the exclusionary rule to his state court conviction. Breithaupt, 352 U.S. at 434. Instead, the Breithaupt majority followed Wolf v. Colorado (1949), 338 U.S. 25, 93 L.Ed. 1782 in holding that the exclusionary rule was not applicable to the states. Breithaupt,352 U.S. at 434. It was not until Mapp v. Ohio (1961), 367 U.S. 643,367 L.Ed.2d 643 was decided, that the exclusionary rule was applied to state prosecutions for state crimes. Schmerber, 384 U.S. at 767.
{¶ 20} The Breithaupt Court proceeded to reject petitioner's due process claim, finding that the withdrawal of blood from an unconscious person by a trained technician in a hospital was not brutal and offensive conduct that "shocked the conscience" or offended a "sense of justice."Breithaupt, 352 U.S. at 435. Thus, Breithaupt was decided under theFourteenth Amendment due process "sense of justice" test. See Sisler
(1995), 114 Ohio App.3d at 343. Breithaupt does not resolve the question in the present case regarding suppression of evidence brought onFourth Amendment grounds.
{¶ 21} Subsequently, in Cupp v. Murphy (1973), 412 U.S. 291,36 L.Ed.2d 900, the United States Supreme Court permitted a nonconsensual, limited search of fingernail samples without a search warrant and without a formal arrest. The court found that the existence of probable cause to believe the man had murdered his wife justified a limited search in order to preserve the highly evanescent evidence they found under his fingernails. Id. at 296.
{¶ 22} In discussing Cupp, and the split of authority on the question of whether an arrest is required before a blood sample may be taken from an unconscious party in a traffic accident, Professor LaFave has stated:
{¶ 23} "Indeed, the case for permitting the taking of the blood sample upon probable cause that the defendant is intoxicated without first arresting him is, if anything, stronger than the case for the searches conducted in Cupp and Franklin. In the blood sample case, as opposed to those cases, there is no room whatsoever for the argument that the lack of a formal arrest may decrease somewhat the chances that the evidence will be destroyed, for the `evanescent' character of the evidence is inherent in its nature and does not depend upon any motive of the defendant to destroy it. *** It is the height of formalism, to say the least, to suggest that a warrantless search on probable cause in order to meet this emergency is reasonable only if the police first declare the hospitalized defendant under arrest. In particular, it `would be ridiculous to require a police officer to perform some formal ritual of arrest over the unconscious body of a critically injured person who was a party to a fatal automobile accident.' The claim that the contrary position `provides some measure of assurance that probable cause is based upon considerations independent of the blood-alcohol test results' is untenable, as the need for a court to determine that probable cause existed prior to the test is present under either rule." (Citations omitted.) 3 LaFave, Search and Seizure (1996) 161-62, Section 5.4(b).
{¶ 24} The Sixth Circuit has adopted the view that theFourth Amendment does not require an arrest prior to administering a blood-alcohol test to an unconscious driver believed to have been driving under the influence of alcohol. United States v. Berry (C.A.6, 1989),866 F.2d 887, 888. See, also, State v. Oevering (Minn. 1978),268 N.W.2d 68, 73 (requiring "arrest ritual" of unconscious victims of alcohol-related accidents would be "absurd"); State v. Campbell (1980),189 Mont. 107, 115-116, 615 P.2d 190, 196; State v. Hollingsworth
(1985), 77 N.C. App. 36, 43-44, 334 S.E.2d 463; Wilhelmi v. Director ofthe Dept. of Transp. (N.D. 1993), 498 N.W.2d 150, 154 (formal arrest of an unconscious driver would be an "empty gesture"); State v. Milligan
(1988), 304 Or. 659, 671-72, 748 P.2d 130; Aliff v. State (Tex.Crim.App. 1982), 627 S.W.2d 166, 170; Van Order v. State (Wyo. 1979), 600 P.2d 1056,1058. See, also, Annotation (1976), 72 A.L.R.3d 325, Section 4.[2]
{¶ 25} Other courts have required the formality of an arrest of an unconscious person, e.g. Commonwealth v. Hlavsa (1979), 266 Pa. Super. 602,405 A.2d 1270, 1271, or relied upon the presence of probable cause to arrest, Galvan v. State (1982), 98 Nev. 550, 655 P.2d 155.
{¶ 26} In light of the serious consequences to the victims of drunk drivers and the minimal intrusion to the suspected violator, we are persuaded that the better rule is that the Fourth Amendment does not require an arrest before a blood sample may be taken from an unconscious driver believed to have been driving under the influence of alcohol.
 Exigency
{¶ 27} Before the results of a nonconsensual, warrantless blood-alcohol test may be admitted into evidence, there must be a demonstration that the circumstances come within a specifically established and well-delineated exception. See Katz v. United States
(1967), 389 U.S. 347, 357, 19 L.Ed.2d 576. One of these exceptions, excusing the obtaining of a warrant is the existence of an exigent circumstance. The Schmerber court concluded that because of the rapid rate at which alcohol diminishes in the blood, and because it would take some time for the officer to investigate and find facts establishing probable cause, there would be no time reasonably to expect the officer to obtain a warrant. Schmerber, 384 U.S. at 770-71. Such facts demonstrate an exigent circumstance, excusing the obtaining of a warrant.
{¶ 28} In the case at bar, it was 1:30 in the morning and more than two hours had passed since the accident when Trooper Sherrod requested the blood test. The officer could reasonably have concluded that there was not sufficient time to obtain a warrant.
 Probable Cause — Clear Indication
{¶ 29} Appellant contends that there was no probable cause for the blood test in the case at bar. The particular language in Schmerber
required that there must be a clear indication — as opposed to a mere chance — that incriminating evidence would be found before an intrusive search may be conducted.[3] Schmerber, 384 U.S. at 769-70.
{¶ 30} A law officer's decision to conduct a warrantless search is evaluated first by the trial court and is reviewed by this court de novo. See Ornelas, 517 U.S. at 699, (determinations of reasonable suspicion and probable cause are generally reviewed de novo). Probable cause is determined from the totality of the circumstances. Illinois v.Gates (1983), 462 U.S. 213, 233, 76 L.Ed.2d 527.
{¶ 31} Our inquiry is directed to the question of whether, at the time the search took place, the totality of the circumstances was sufficient to warrant a prudent person to believe that Appellant had been driving under the influence of alcohol and that a blood-alcohol test would provide evidence thereof.
{¶ 32} Facts presented at the suppression hearing established that Appellant was involved in a serious two-car collision at approximately 11:00 in the evening and was taken from the scene of the accident for medical treatment. Trooper Haines subsequently detected the odor of alcohol in the rear of Appellant's vehicle. Trooper Sherrod reported to the hospital and there found Appellant to be incoherent and incapable of communication. Trooper Sherrod detected the odor of alcohol on Appellant's person from a distance of several feet, more than two hours after the accident.
{¶ 33} In balancing the individual's interests in privacy and security against society's interests in obtaining the evidence, we find the following. The need to obtain a sample of Appellant's blood was high. This was a serious accident, with both drivers requiring medical attention and both automobiles seriously damaged. The smell of alcohol was present in Appellant's automobile as well as on his person more than two hours later. Appellant was unconscious and it was not possible to conduct any less-intrusive, field sobriety tests. The invasion that the search would entail, while clearly a search and a bodily invasion, was commonplace and involved virtually no risk, trauma, or pain to Appellant. Winston v. Lee, 420 U.S. at 761, quoting Schmerber,384 U.S. at 771. The test was performed at a hospital by trained medical personnel. Under these circumstances, the need to conduct the search outweighed the invasion that the search would entail. Schmerber's clear indication test was satisfied.
{¶ 34} Appellant contends that the evidence is insufficient. First, he cites Trooper Haines' testimony that he "had no proof" that Appellant was driving under the influence. Haines' actual testimony was that he had no proof of intoxication beyond the odor of an alcoholic beverage in the vehicle.
{¶ 35} Next, Appellant contends that the discovery of an odor of alcohol in Appellant's automobile does not necessarily mean that Appellant had been drinking alcohol. Of course this is true, but neither the law officers nor this Court view each fact in isolation. Rather, such determinations are based on facts and circumstances collectively and as they comprise the totality of the circumstances.
{¶ 36} Finally, Appellant argues that Trooper Sherrod was not close enough to determine that the odor of alcohol, which he detected on Appellant's person, was from Appellant's breath. Again, while this claim may be true enough, it is another fact that is not properly considered in isolation.
{¶ 37} Under Appellant's scenario, he would have the troopers — and this Court in review — reason that another person sat in Appellant's vehicle immediately before Appellant's last excursion, spilled alcohol into the vehicle as well as onto Appellant's clothing and then left; that Appellant was shortly thereafter the innocent victim of a serious two-car accident; and that Trooper Sherrod smelled only the result of the alcohol spill onto Appellant's person or clothing when he approached Appellant at the hospital.
{¶ 38} While such a scenario is not impossible, the question before the trial court and this court on review is whether the law officers acted reasonably in concluding that unlawful activity probably occurred. State v. George (1989), 45 Ohio St.3d 325, 329, quotingIllinois v. Gates, 463 U.S. at 235. Probable cause does not require certainty, but rather invokes a question of probabilities — a probability that criminal activity has taken place. See Illinois v.Gates, 463 U.S. at 235. In this case, the probability that Appellant had been driving his automobile while under the influence of alcohol was sufficient to support the decision of the state troopers to request a blood-alcohol test and to permit the results of such test into evidence.
{¶ 39} Accordingly, the first assignment of error is overruled.
 Assignment of Error No. 2
{¶ 40} "The trial court erred by sentencing appellant to the maximum term of five years imprisonment when the sentence was imposed for two offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree."
{¶ 41} In the second assignment of error, Appellant challenges the imposition of the maximum term of imprisonment by the trial court because the trial court focused solely on the serious physical harm to the victim, and failed to analyze and adequately address all of the seriousness factors contained in R.C. 2929.12(B). Appellant makes three arguments regarding his contention.
{¶ 42} Appellant first cites to R.C. 2929.12(B)(2) and argues that the fact that the victim suffered serious physical harm cannot establish that the offender's conduct is more serious than conduct normally constituting the offense. This is so, he claims, because the causing of serious physical harm is an essential element of the crime for which he was convicted, aggravated vehicular assault. See R.C. 2903.08.
{¶ 43} This argument is without merit. R.C. 2901.01(A)(5) defines serious physical harm to persons as including "any of the following:" (Emphasis added.)
{¶ 44} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
{¶ 45} (b) Any physical harm that carries a substantial risk of death;
{¶ 46} (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
{¶ 47} (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
{¶ 48} (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
{¶ 49} The trial judge indicated in his journal entry that the injuries suffered by the victim in this case were "life-threatening" and will cause her to be "permanently impaired." The record demonstrates that the victim suffered two broken femurs and had bars inserted into her legs to replace them, a broken knee cap, cracked pubic bone, cracked tail bone, broken nose, two broken wrists, broken ribs, and two collapsed lungs. She takes medication for pain, sleep, anxiety, depression and thyroid problems. The injuries suffered by the victim in this case met not only one of the statutory factors, but at least four. The trial judge could reasonably conclude that such injuries were more extensive and serious than what is minimally or normally required to constitute the element of serious physical harm for aggravated vehicular assault.
{¶ 50} Next, while Appellant concedes that the trial court entered findings that the minimum sentence would demean the seriousness of Appellant's conduct and also that Appellant had committed the worst form of the offense, he argues that the trial court erred in failing to "adequately articulate" its reasons for imposing the maximum sentence. In a case such as this, Ohio requires that a trial court must set forth its reasons for imposing the maximum prison term. R.C. 2929.19(B)(2)(d);State v. Edmondson (1999), 86 Ohio St.3d 324, 328. The record reveals that the trial court did so.
{¶ 51} The trial judge stated at the sentencing hearing that he considered the impact of this accident upon the victim and found the injuries suffered by the victim to be "very disturbing." She was trapped for an hour and a half in her car and suffered serious injuries that will leave her incapacitated for the rest of her life. The judge also considered the fact that Appellant must have consumed a large quantity of alcohol in order to have such a high blood level and that he had a prior conviction for driving under the influence of alcohol.
{¶ 52} In addition, the trial judge indicated that he reviewed a presentence investigation report and a statement from the victim, which was read into the record at the sentencing hearing. That statement addressed the physical, emotional, and financial impact of this matter upon the victim and her family. On the night of the accident, the victim was on her way to work. She had not been able to work since the accident. Her family was forced to depend upon the aid of extended family. Following the accident, she faced nearly a year of surgeries and rehabilitation before she could even walk again. Her three young children, ages twelve, ten and two, suffered from the results of the accident as well. The victim still could not carry her small child. Thus, the trial judge adequately set forth his reasons for imposing the maximum sentence.
{¶ 53} Finally, Appellant asserts error in the failure of the trial court to address the seriousness factors of R.C. 2929.12(B). While the trial court is required to consider these factors, the sentencing judge is not required to use specific language or make specific findings on the record in order to demonstrate consideration of the applicable seriousness factors of R.C. 2929.12. State v. Arnett (2000),88 Ohio St.3d 208, 215. Instead, "a rote recitation" that the applicable factors were considered has been held to suffice. Id.
{¶ 54} The trial judge indicated in his sentencing entry that he considered the record, oral statements, the purposes and principles of sentencing under R.C. 2929.11, the need for deterrence, incapacitation, rehabilitation and restitution and "the seriousness and recidivismfactors relevant to the offense and offender pursuant to R.C. 2929.12[.]" (Emphasis added.) Thus, the trial court complied with Arnett. Moreover, Appellant has proffered no reason why any of the other factors in R.C.2929.12 are specifically relevant to a consideration of his sentence. Accordingly, the record demonstrates that the trial court properly considered the relevant sentencing factors set forth in R.C. 2929.12(B).
{¶ 55} Appellant's second assignment of error is overruled.
 III.
{¶ 56} Appellant's two assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
BAIRD, P.J. and WHITMORE, J., CONCUR.
[1] At least one Ohio court has determined that R.C. 4511.191(B), Ohio's implied consent statute, authorizes the withdrawal of blood from an unconscious individual, notwithstanding the presence or absence of a prior actual arrest, where a police officer has reasonable grounds to believe the person was driving while under the influence of alcohol. See, e.g. State v. Taylor (1982), 2 Ohio App.3d 394, 395. As noted by the State, however, Appellant does not assign error in application of this statute. Instead, his argument is based upon the Fourth Amendment to the United States Constitution.
[2] It also appears that a majority of states with implied consent statutes that have addressed the issue, have held that the arrest of an unconscious person is not a prerequisite to the application of the statute. See State v. Wyrostek (1988), 108 N.M. 140,142-43, 767 P.2d 379. This majority includes Ohio. See, e.g., State v. Taylor (1982),2 Ohio App.3d 394, 395.
[3] In State v. Pearson (1996), 114 Ohio App.3d 153, 158, the Third District concluded that the "clear indication" test does not differ from the requirements of "probable cause." The Fourth District has found that the "clear indication" standard requires a greater quantum of evidence than that required by probable cause. State v. Holmes (July 17, 1986), 4th Dist. No. 1163. Appellant in the case at bar has argued no distinction on this point. Our result is the same by either standard.