IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-001

Filing Date:  September 4, 2018

Docket No. A-1-CA-34496

STATE OF NEW MEXICO,

     Plaintiff-Appellee,
v.

JEANNE ROEPER,

a/k/a JEANNA ROEPER,

     Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY
Jane Shuler Gray, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

VARGAS, Judge

I.     INTRODUCTION

{1}     Defendant appeals her criminal conviction for failure to enforce compulsory school attendance resulting from her fifteen-year-old son's habitual truancy. We conclude that the Compulsory School Attendance Law (the Act), NMSA 1978, §§ 22-12-1 to -10 (1967, as amended through 2017) requires that the juvenile probation office conduct an investigation into whether Defendant's child was "a neglected child or a child in a family

1

in need of services" pursuant to Section 22-12-7(C) and, taking the information discovered in that investigation into consideration, make a determination and finding that the truancy may have been caused by Defendant before prosecuting Defendant. As the evidence presented was insufficient to show that the required investigation was conducted, we reverse.

## II.    BACKGROUND

{2}     Defendant is the mother of three children, including fifteen-year-old J.M. (Son). Son had a history of behavioral problems and had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). Defendant also cares for her younger son, who is deaf and suffers from autism and Down syndrome. Along with her own three children, Defendant also cares for her grandchild.

{3}     In the winter of 2012, following a stay in hospice, Defendant's husband died. Defendant suffers from bipolar disorder and depression, and eight or nine months after her husband's death, in the fall of 2013, Defendant suffered a mental breakdown and checked herself into a hospital for approximately three weeks.

{4}     While Defendant was hospitalized, Son's grandmother enrolled him at Eddy Alternative School in mid-August 2013. Son began school at Eddy Alternative School as an eighth grader after having been held back from high school for one year. Son's attendance at the school was "sporadic," and he quickly accumulated an impermissible number of absences. The school attempted, without success, to contact Defendant regarding Son's absences on several occasions. On September 19, 2013, the school mailed Defendant notice that Son had four unexcused absences, following up with another letter the next day, notifying of Son's fifth unexcused absence. Both letters requested that Defendant contact the school within one week to schedule a meeting with the school's principal. On October 14, 2013, the school sent Defendant written notice that Son had accumulated ten and a half unexcused absences and requested that Defendant contact the principal of the school within forty-eight hours. The letter further advised that the case was "being referred to the [j]uvenile [p]robation & [p]arole [o]ffice for investigation and potential prosecution."

{5}     The school forwarded its file on Son to Danial Schwertner, Chief Juvenile Probation Officer (Schwertner). Schwertner reviewed the file and decided solely from that review that Defendant may have caused Son's habitual truancy. The State filed a complaint in magistrate court, charging Defendant with one count of failure to enforce compulsory school attendance, contrary to Section 22-12-7. At trial, Defendant testified that Son was sometimes violent toward her and that she was afraid of him. As evidence of Son's violent behavior, Defendant introduced evidence that between April 2013 and December 2013 emergency services received at least five 911 calls reporting disturbances involving Son at the family home.

**{6}**     The magistrate court found Defendant guilty. Defendant appealed to the district court, where she received a trial de novo. The district court upheld the magistrate court's judgment.

## III.     DISCUSSION

### The Act

**{7}**     The Act imposes a responsibility upon parents of school-aged persons to insure school attendance. Section 22-12-2(C) Included among the provisions of the Act is a statutorily-created protocol for addressing habitual truancy and a parent's failure to satisfy his or her obligation to insure a child's school attendance. *See* § 22-12-7. A habitually truant student is a student with ten or more unexcused absences. Section 22-12-9(A)(1).

**{8}**     To initiate enforcement against the parent of a habitual truant, Section 22-12-7(B) requires that the local school board or its authorized representative "give written notice of the habitual truancy by mail to or by personal service on the parent." If the student continues to accumulate unexcused absences after notice is provided, the student "shall be reported to the probation services office . . . *for an investigation as to whether the student shall be considered to be a neglected child or a child in a family in need of services*." Section 22-12-7(C) (emphasis added). "If, *after review by the juvenile probation office. . . a determination and finding is made* that the habitual truancy by the student may have been caused by the parent of the student," the matter will be referred "to the district attorney's office or any law enforcement agency having jurisdiction for appropriate investigation and filing of charges." Section 22-12-7(D) (emphasis added). A parent who, "after receiving written notice" and "after the matter has been reviewed [by the juvenile probation office] in accordance with Subsection D[,]" knowingly allows the student to violate the Act commits a petty misdemeanor. Section 22-12-7(E).

**{9}**     While Section 22-12-7(E) explicitly establishes the written notice and the juvenile probation officer's review as prerequisites to prosecution, it makes no reference to the investigation called for in Section 22-12-7(C). Defendant contends that, notwithstanding the omission of any reference to an investigation from Section 22-12-7(E), the statute also requires the investigation as a prerequisite to prosecution. Defendant argues that the State did not satisfy its burden because it failed to provide substantial evidence that the probation services office properly investigated whether Son was "a child in a family in need of services" before making a "determination and finding . . . that the habitual truancy by the student may have been caused by the parent" and referring the matter to the district attorney's office. Section 22-12-7(C), (D). In response to Defendant's argument, the State claims that the statute does not specify any mandatory steps to be taken in an investigation and the probation officer's review of Son's file in this case was sufficient to satisfy the statutory requirement.

### Investigation Required by Section 22-12-7(C)

3

**{10}** We first consider the language of the statute to determine the nature and scope of the investigation required by Section 22-12-7(C). When considering the meaning of a statute, we note that issues of statutory interpretation are subject to a de novo review. *State v. Tafoya*, 2012-NMSC-030, ¶ 11, 285 P.3d 604. When interpreting a statute, we seek to fulfill the Legislature's intent, taking into consideration the fact that the primary indicator of that intent is the language it used in creating the statute. *State v. Erwin*, 2016-NMCA-032, ¶ 5, 367 P.3d 905. When the statute contains terms that are "clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939 (internal quotation marks and citation omitted). In addition, statutory subsections "must be considered in reference to the statute as a whole[,]" *id.* ¶ 13 (internal quotation marks and citation omitted), and "must be construed so that no part of the statute is rendered surplusage or superfluous." *State v. Javier M.*, 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1 (internal quotation marks and citation omitted); *see State v. Jackson*, 2010-NMSC-032, ¶ 28, 148 N.M. 452, 237 P.3d 754 (characterizing this rule as fundamental, and stating it should be applied to every "word, clause, sentence provision[,] or part" of a statute (internal quotation marks and citation omitted)), *overruled on other grounds by State v. Radosevich*, 2018-NMSC-028, ¶¶ 2, 34, 419 P.3d 176.

**Nature and Scope of an Investigation Under Section 22-12-7(C)**

**{11}** The parties do not dispute that the plain language of the statute clearly requires the juvenile probation office to conduct an investigation into whether a habitually truant student is "a neglected child or a child in a family in need of services" if the student continues to accrue unexcused absences after written notice is given to the student's parent. Section 22-12-7(C). The State, however, argues that nothing in the statute defines the investigation called for in Section 22-12-7(C), or mandates the type of investigation that it must conduct. Because the statute does not define the nature and scope of the investigation, the State contends that the investigation conducted by the juvenile probation office regarding Son was sufficient.

**{12}** While we agree that the statute contains no explicit language setting out the scope and nature of the investigation the juvenile probation office must conduct, the mandate of the statute requires that the juvenile probation office conduct an investigation sufficient to determine whether the student is a "neglected child or a child in a family in need of services." The Children's Code specifically defines a **"family in need of family services,"** in relevant part, as "a family whose child's behavior endangers the child's health, safety, education or well-being[.]" NMSA 1978, Section 32A-3A-2 (A)(1) (2005). "[F]amily services" are "services that address specific needs of the child or family." Section 32A-3A-2(B). The Legislature unequivocally incorporates the requirements of the Children's Code into the Act, making the child subject to the provisions of the Children's Code if, after investigation, the child is found to be "a neglected child or a child in a family in need of services." Section 22-12-7(C). Included among the provisions of the Children's Code is the Family Services Act, NMSA 1978, §§ 32A-3A-1 to -11, (1993, as amended through 2016), which "recognize[s] that many instances of a child's behavior are symptomatic of a family in need of family services" and "provide[s] prevention,

diversion and intervention services" for children or families. Section 32A-3A-1(B); *see* NMSA 1978, § 32A-3B-1(B)(2) (2005) (expressing legislative purpose of the Family in Need of Court-Ordered Services Act "to recognize that many instances of truancy . . . by a child are symptomatic of a family in need of services"); *see also* NMSA 1978, § 32A-3B-2(A) (2009) (defining "family in need of court-ordered services" as one that has exhausted available family services and requires court intervention where "child, subject to compulsory school attendance, is absent from school without an authorized excuse more than ten days during a school year"). By structuring the Act to incorporate the provisions of the Children's Code, the Legislature intended that the probation office conduct an investigation sufficient to determine whether the student is endangering his own health, safety, education, or well-being. *See* § 32A-3A-2(A)(1) (defining a "family in need of family services").

**{13}**　Our interpretation is bolstered by the legislative history of the Act. *See State v. Lopez,* 2009-NMCA-112, ¶ 5, 147 N.M. 279, 219 P.3d 1288. Considering the history and background of the Act, we note that prior versions of Section 22-12-7 were more punitive than the current version; parents could be convicted before courts or the juvenile probation office sought out the cause of and remedy for a student's habitual truancy. Over the years, Section 22-12-7 transitioned from assigning automatic penalties for violating attendance policies to requiring investigation into the circumstances causing those violations. Overall, the changes made to Section 22-12-7 show the Legislature's recognition of both the importance of school attendance, and of the possibility that poor attendance may be indicative of other problems with the student or in the home. Section 22-12-7 balances the Legislature's intent to hold parents accountable for their student's poor attendance while still recognizing and accounting for the difficulties families may face beyond the school or classroom.

**{14}**　The 1986 version of Section 22-12-7 allowed an adjudication and assignment of penalties to precede any investigation into the circumstances of the family or the student. It required that notice of the student's absences be given to the parent, much like the current version, but mandated that continued absences following delivery of written notices be reported to magistrate or metropolitan court. If the court found that the parent knowingly allowed the continued absences, he or she was subject to a penalty under the statute. If absences continued after the court imposed a penalty, the matter was reported to the children's court, and the statute required that the student be considered "a neglected child or a child in need of supervision" under the Children's Code. Section 22-12-7(B) (1986). The 1986 version made no provision for investigation into the circumstances causing the absences, instead making it mandatory that courts find a child to be neglected or in need of supervision upon accrual of any additional absences.

**{15}**　The following year, the Legislature restructured Section 22-12-7 to resemble the current statute we use today by requiring an investigation into the need for children's court services upon additional absences following notice of habitual truancy, and prior to an adjudication under the statute. It also removed the provision that made an adjudication under the Children's Code the automatic result of additional absences. *See* § 22-12-7(C) (1987). Under this later version, and as with the current version, the Legislature required

the student's accumulating excess absences to be reported to the local probation services office "for an investigation as to whether the student shall be considered to be a neglected child or a child in need of supervision" under the Children's Code. *Id.* The juvenile probation office or local children's court judge then would make a determination of whether "the nonattendance by the student may have been caused by the parent," in which case the matter was referred to an appropriate law enforcement agency "for appropriate investigation and filing of charges." Section 22-12-7(D) (1987). In 2004, the Legislature shifted the responsibility for investigating the student's circumstances from the children's court and probation offices to the probation offices alone, but left in place the other requirements, including notice, an investigation into the need for children's court services, and a finding that the parent may have caused the absences, contained in the current version. *See* § 22-12-7(C),(D) (2004).

{16}   The changes between the 1986 and 1987 versions of Section 22-12-7 are clearly indicative of a shift in the legislative intent from a punitive focus to one intended to assess and address the causes underlying a student's habitual truancy before a parent is charged with a violation of the statute. By shifting from a post-adjudication investigation to a pre-adjudication investigation, the Legislature explicitly recognized that continuous school absences may be a symptom of deeper issues in the child's family or personal life requiring family services to remedy those issues. The restructuring of the statute to allow for a more meaningful evaluation of whether the family is in need of services *prior* to the filing of criminal charges and a possible conviction further evidences the Legislature's intent that an investigation serve as a prerequisite to prosecution under Section 22-12-7.

{17}   While we decline to define what specifically must be done to comply with the statutory mandate, unless the student's file itself demonstrates that a child is neglected or a child in a family in need of services, simply reviewing the file is not sufficient. Instead, we expect that in most instances, an investigation will include, at the very least, interviews with the student's teachers to determine whether they have any information about the student's family life that would assist the juvenile probation office in making its determination. We further anticipate that the juvenile probation office would attempt to speak with the student and student's parent, guardian, or other caretaker, seeking similar information. Absent such interviews, we find it difficult to see how the juvenile probation office could properly determine whether the student was "a neglected child or a child in a family in need of services." Section 22-12-7(C).

**Schwertner's Investigation**

{18}   We now consider whether there was sufficient evidence in the record that the juvenile probation office conducted a proper investigation as to whether Son was "a neglected child or a child in a family in need of services." A challenge to the sufficiency of the evidence requires consideration of "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314; *see State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930 ("[T]he Court must scrutinize the evidence and review the jury's fact-finding function to ensure that a

6

rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt."). That evidence is to be viewed in the light most favorable to the State, and we "indulge all reasonable inferences in support of the verdict[] and disregard all evidence and inferences to the contrary." *State v. Cobrera*, 2013-NMSC-012, ¶ 7, 300 P.3d 729 (internal quotation marks and citation omitted). The question is whether the district court's "decision is supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).

**{19}** Schwertner testified that when evaluating whether a child is neglected or in a family in need of services, he reviews the student's file, reading the documents therein to see if the school had reported seeing any signs of abuse or neglect. Files typically include letters, attendance records, a cover sheet with student's personal information, behavioral records, notes documenting any contact with the student's family, and occasionally, teacher's notes regarding the student's behavior. Schwertner testified that he never contacts parents when determining whether a child is part of a family in need of services, and instead relies on a review of the information in the file. He explained that no further efforts are necessary because his role involved only a review of the information regarding attendance that the school collected, and it was "not a situation where [he is] involved in the proof of it."

**{20}** Son's file included a cover letter, attendance record, disciplinary report, and copies of the letters sent to Defendant regarding Son's absences. Our record on appeal contains nothing detailing the information set out in the disciplinary report, and we are therefore unable to consider that information. Schwertner testified that he "reviewed" Son's file and concluded that Son "did not meet the criteria for any abuse and neglect," that there was no evidence of abuse, and that he did not feel that Defendant's family was a family in need of services. Schwertner also testified that his department acted under an assumption that when a student is "under ninth grade, parents have a lot more control and authority over the child than they do once [the student] get[s] up into the high school." Son was fifteen at the time in question—at least one year older than an average eighth grader. Although Schwertner testified that he considered Son's grade level in making his determination regarding abuse and family services, he also claimed that the determination was "pretty much" based on the age of the student. Additionally, there is evidence Schwertner knew Son through prior referrals to probation not related to this case. There is not, however, any evidence regarding Schwertner's involvement with those referrals or the extent of his knowledge of the circumstances of those referrals. There is also no evidence that Schwertner considered or used his knowledge of Son's referrals in assessing whether Son was part of a family in need of services. Ultimately, Schwertner believed reviewing Son's file for signs that the family was in need of services was sufficient to determine whether Defendant may have been the cause of Son's absences.

**{21}** Schwertner's testimony about his investigation is of little assistance to the State. Initially, we note that had the Legislature intended that the investigation be limited to the review of the student's file, there would be no need to involve the juvenile probation office. School officials are in just as good a position to conduct such a review as the juvenile probation office. The Legislature's referral of the investigation to the juvenile probation office indicates its intent to require more than a cursory file review before determining whether the student is a "neglected child or a child in a family in need of services." *See* § 22-12-7(C). Furthermore, Schwertner's testimony at trial is more akin to an assessment of the merits of the adjudication of Son as a habitual truant rather than an investigation of whether Son's family circumstances merited referral to the children's court. His testimony contains vague references to the materials in the file that he "reviewed," but does not indicate, with any specificity, what information he gathered from his review. Schwertner did not divulge what was in Son's disciplinary report, and gave no explanation as to why the information contained in the report satisfied him that Son was not "a neglected child or child in a family in need of services." Section 22-12-7(C). Schwertner's "review" did not include any interviews with Defendant, Son, Son's grandmother, other members of Son's family, Son's teachers, or anyone else who interacted with Son on a regular basis who might be able to provide information about whether Son was "a child in a family in need of services." *See id.* Indeed, it is unclear from the record whether, in making his assessment, Schwertner was aware that Son's father had recently died, that his mother had been hospitalized, that in addition to Son, Defendant cared for a special needs child, or that numerous calls were made to 911 to report disturbances involving Son at the family home. Instead of seeking to verify or supplement any of the information contained in the file, Schwertner simply sought to confirm that Son had more than the permitted number of unexcused absences and that Defendant had been notified of those absences. The evidence presented regarding Schwertner's efforts in this case was nothing more than a superficial review of Son's file. While a review of the student's file is absolutely contemplated by the language of the statute, Section 22-12-7(C) requires more. Schwertner's actions were insufficient to allow him to determine whether Son was "a child in a family in need of services" and did not constitute an "investigation" as required by Section 22-12-7(C).

**Investigation as a Prerequisite to Prosecution Under Section 22-12-7(E)**

**{22}** Having determined the nature and scope of an investigation required by Section 22-12-7(C) and concluded that Schwertner's investigation did not satisfy the statutory requirements, we now consider whether a proper investigation is a prerequisite to a prosecution under Section 22-12-7(E). While at first blush, the Legislature's omission of any reference to the investigation from Section 22-12-7(E) would seem to allow a prosecution of a parent without an investigation, the plain language, structure, and legislative history of the Act make clear that the investigation is intended to be an integral part of the juvenile probation office's determination as to whether the habitual truancy may have been caused by the student's parent. *See* § 22-12-7(C), (E). Section 22-12-7(D) of the statute provides that, "[i]f, *after review by the juvenile probation office* . . . a determination and finding is made that the habitual truancy by the student may have been caused by the parent of the student, then the matter will be referred . . . to the district

8

attorney's office or any law enforcement agency." Section 22-12-7(D). Notwithstanding that the statute requires the juvenile probation office to conduct a review, it fails to define what exactly the juvenile probation office is to review in making its "determination and finding" regarding the cause of the student's truancy. Again, while we will not adopt specific requirements of what must be reviewed by the juvenile probation office before making any determination or finding regarding the cause of student's truancy, we expect that any such review will include information collected in the statutorily mandated investigation into the student's status as a "neglected child or a child in a family in need of services" required by Section 22-12-7(C), as well as any other information available to the juvenile probation office. Indeed, to interpret Section 22-12-7(E)'s omission of any reference to an investigation in a way that renders an investigation unnecessary for prosecution under Section 22-12-7 would render the investigation language of Section 22-12-7(C) superfluous. *See Javier M.*, 2001-NMSC-030, ¶ 32. Finally, we expect that the information gathered during that investigation will bear significantly on the juvenile probation office's determination and finding, as we anticipate it will provide the juvenile probation officer with at least a basic understanding of the student's home life and parent engagement.

**{23}** Because Section 22-12-7(C) requires an investigation into whether a student is "a neglected child or a child in a family in need of services," the juvenile probation office must review the information learned from the investigation as part of its determination and finding as to whether the student's habitual truancy may have been caused by the parent. No such investigation took place in this instance. We hold that the State failed to satisfy the statutory prerequisite to prosecuting Defendant for a violation of the Act, requiring the reversal of Defendant's conviction.

**Sufficiency of the Evidence**

**{24}** We look next to Defendant's assertion that there was insufficient evidence to support her convictions. *See State v. Mascarenas*, 2000-NMSC-017, ¶ 31, 129 N.M. 230, 4 P.3d 1221 (addressing a sufficiency argument in an effort to ensure no double jeopardy violation). When reviewing for sufficiency, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). The question then becomes "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{25}** As noted previously, the information gathered during the investigation should provide the juvenile probation officer with some understanding of parental engagement. Here, however, Schwertner's investigation was so deficient that it contributed nothing to an assessment of Defendant's parental engagement, and provided no information to assist the district court in determining whether Defendant "knowingly allowed" Son's truancy to continue. *See* § 22-12-7(E) (providing that a parent who, after receiving requisite notice and after investigation has occurred, "knowingly allows the student to continue" his pattern of habitual truancy is guilty of a petty misdemeanor). As such, the evidence

9

proffered to support Defendant's conviction on that element is limited, consisting mostly of Defendant's testimony regarding her efforts to make Son attend school.

**{26}** The evidence is sufficient to demonstrate Defendant knew Son had missed school—she admitted to having received letters informing her of his absences. Evidence of that knowledge alone, however, is insufficient to support Defendant's conviction here because the language of the statute requires not only that the parent knew of, but also allowed, the student's continued school absences. Thus, a conviction under Section 22-12-7(E) contains an implicit requirement that the parent either acted or failed to act in a way that authorized or ignored the child's continued absences. The evidence demonstrates Defendant attempted to get Son to attend school by waking him up, making breakfast, and arranging for his transportation to school, but that Defendant was afraid of Son, and when Defendant tried to get Son to go to school, Son became violent. This evidence was not sufficient to support a conclusion that Defendant allowed Son's absences, either by condoning his behavior or by an apathetic failure to act.

### III.  CONCLUSION

**{27}** We reverse the judgment of the district court and remand the matter to the district court to vacate the conviction.

**{28}  IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**EMIL J. KIEHNE, Judge**